## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| _____ | | |
| Bella MANGUIAT | ) | |
| 3401 Leslie Ave | ) | |
| Temple Hills, MD 20748 | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. _____** |
| | ) | JURY TRIAL DEMANDED |
| BOARD OF EDUCATION OF | ) | |
| PRINCE GEORGE'S COUNTY, | ) | |
| 14201 School Lane | ) | |
| Upper Marlboro, MD 20772 | ) | |
| | ) | |
|     Defendant. | ) | |
| _____) | | |

## COMPLAINT

**COMES NOW** the Plaintiff, Bella MANGUIAT ("Manguiat"), by and through the

undersigned counsel, and by way of Complaint against Defendant Board of Education of Prince

George's County ("PGBOE"), alleges and states as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction of this Court over this cause of action is founded on Titles 28 U.S.C.

§ 1331, 42 U.S.C. § 1981, and 42 U.S.C. § 2000e *et seq*., as amended.

2.    Venue is proper in this judicial district because the defendant has its principal

place of business in this district and the acts and events complained of occurred in the State of

Maryland.

3.    Ms. Manguiat has exhausted and satisfied all pertinent administrative and

statutory prerequisites necessary for the institution of this action and the action is timely as to all

counts herein.  *See* EEOC Right to Sue, attached hereto as Exhibit A.

## PARTIES

4.      Plaintiff Bella Manguiat is a teacher, who is a Filipino citizen, who was employed under a contract as a Special Education teacher at Francis Scott Key Elementary School in Walker Mill, MD.

5.      Defendant Prince George's County Board of Education is the employer of Plaintiff and exists and conducts business in Prince George's County, Maryland.

6.      Defendant PGBOE is a party to the employment contract between Plaintiff and BOE.

## STATEMENT OF FACTS GIVING RISE TO RELIEF

7.      Plaintiff is a teacher from the Philippines who was recruited by Defendant in or about late 2007.

8.      In 2007, Defendant petitioned for Plaintiff's visa with the United States Citizenship and Immigration Services ("USCIS").

9.      Ms. Manguiat has a Master's Degree in Special Education and is fully certified by the Maryland State Department of Education, both for regular education and special education.

10.      Effective January 8, 2008, Plaintiff and Defendant entered into a "regular" contract (the "Employment Contract") to employ Plaintiff as a Special Education teacher at one of the Prince George's County public schools.

11.      In Prince George's County, certified teachers, upon hire, are placed on probationary periods lasting two years.

12.      Under the Employment Contract, such probationary period can be extended for a third year, if Defendant, Prince George's County Board of Education, provides notice of such extension, not later than June 15 of the second year (for those hired after January 1), or, not later than sixty (60) days **prior** to the second anniversary date.

2

13.     In or about January 8, 2008, Ms. Manguiat began her employment at Benjamin Foulois Elementary School, where she was assigned to teach Sixth Grade Special Education Math and Science.

14.     A teacher is rated as follows in Prince George's County: "Satisfactory;" "Needs to Improve;" or "Unsatisfactory."

15.     In June 2009, at the end of the 2008- 2009 academic year, Ms. Manguiat received a "Satisfactory" rating, the highest rating possible, as she had for the previous academic year, 2007-2008.

16.     In or about August 2009, Plaintiff and the special education program in which she was teaching, were transferred to Francis Scott Key Elementary School ("FSK"), where Judie Strawbridge was the Principal.

17.     Upon information and belief, Principal Strawbridge was African-American.

18.     At FSK, Ms. Manguiat was assigned to teach the Fifth Grade Special Education Math, where she was the only Asian teacher.

19.     Unlike her American counterparts, Ms. Manguiat was never provided any assistance or support, including the use of para-professionals and instructional assistance, a basic requirement under the special education program.

20.     In or about September 2009, at Francis Scott Key, Ms. Manguiat experienced sexual harassment by a male teacher, Paul Ruffins, and reported it to her supervisor, but nothing was done to address her concerns.

21.     Upon information and belief, Paul Ruffins was an African-American Reading Teacher.

22.     In or about October 2009, just one month after Ms. Manguiat arrived at Francis Scott Key, Principal Strawbridge evaluated Ms. Manguiat and gave her an "Unsatisfactory"

rating, the lowest rating possible.

23.     Ms. Manguiat protested against the inaccurate performance evaluation and continued to complain that she was being sexually harassed by Mr. Rufffins and that she was being treated differently because of her race and/or national origin.

24.     Ms. Manguiat was often called another name instead of her name.

25.     Ms. Manguiat was called "stupid" and humiliated by the staff, including the maintenance staff.

26.     Ms. Manguiat was told to go back to her country.

27.     During teacher meetings, Principal Strawbridge ignored Ms. Manguiat and refused to acknowledge her presence.

28.     Unlike her American counterparts, Ms. Manguiat was not given equal opportunity to voice her concerns or contribute to the discussions pertaining to the educational program at FSK.

29.     In December 2009, Ms. Manguiat voiced her complaints to Principal Strawbridge in the presence of Area Executive Director, Kathy Kurtz, regarding her hostile work conditions, her negative evaluation given by Principal Strawbridge as well as the harassment by Mr. Ruffins.

30.     In or about January 2010, Principal Strawbridge assigned Plaintiff to co-teach with said male harasser, Mr. Ruffins.

31.     In or about January 2010, Ms. Manguiat achieved positive results from the student's Formative Assessment Test II, which she shared with Principal Strawbridge, but Ms. Strawbridge refused to recognize Plaintiff's accomplishment.

32.     On or about January 26, 2010, Principal Strawbridge held a meeting with the Fifth Grade teaching team, without any notice and outside of the regular hours, unbeknownst to Ms. Manguiat.

33.     The next day, Principal Strawbridge alleged that Ms. Manguiat had been insubordinate for not being present at said meeting.

34.     Instead, on or about January 26, 2010, in retaliation and discrimination against Ms. Manguiat, Principal Strawbridge recommended that Ms. Manguiat be placed on an extended probationary period for the third year.

35.     In or about January 2010, at her second anniversary of employment, Ms. Manguiat became eligible for tenure.

36.     In or about February 2010, Ms. Manguiat complained to the Prince George's County Educator's Association ("PGCEA"), her teachers' union, regarding the hostile work environment and the sexual harassment by Mr. Ruffins.  She also reported the same to Equity Assurance and Compliance of Prince George's County Public Schools.

37.     Thereafter, Ms. Strawbridge deliberately made an uncorroborated conclusion that Ms. Manguiat was "performing less than satisfactory," and consequently, the school board rendered Ms. Manguiat "ineligible" for tenure.

38.     On or about April 20, 2010, Defendant, by and through Dr. Hite, Prince George's County Superintendent, notified Plaintiff that Defendant had extended her probationary period for a third year because she had not been qualified for tenure.

39.     The April 20, 2010 notice did not advise Plaintiff of her rights to appeal this determination.

40.     The Employment Contract requires that Defendant Board of Education "shall" provide notice of extension to the employee, either before June 15 of the second year, or sixty (60) days before the second anniversary date.

41.     In this case, Defendant should have provided the extension notice by June 15, 2009, or November 9, 2009.

42.     In breach of the Employment Contract, on or about April 20, 2010, well after the notice period expired, Ms. Manguiat was put on notice that she would be placed on probation for a third year.

43.     Although Ms. Manguiat was eligible, because she was not "tenured," and Ms. Strawbridge refused to recommend her, she was not able to seek U.S. "permanent resident status" through her employer Defendant.

44.     The Employment Contract requires that teachers placed on a third year probationary period be provided with a mentor and that the employee be reevaluated at the end of the third year.

45.     Defendant never provided Ms. Manguiat with a mentor.

46.     Though Ms. Manguiat objected to the impropriety of the extension, and the school's failure to provide a mentor and other educational assistance, nothing was done to address her complaints.

47.     From this point forward, Ms. Manguiat continued to face further retaliation.

48.     In June 2010, Ms. Manguiat was not given a year-end evaluation, while other teachers outside of her protected class were given their evaluations.

49.     Ms. Manguiat was denied access to proper support and mentorship, which similarly situated teachers outside of her protected class received.

50.     In August 2010, without notice, Principal Strawbridge demoted Ms. Manguiat to teach the First Grade Special Education Self Contained class, which encompassed all subjects.

51.     Ms. Strawbridge denied Plaintiff due classroom materials, altering her ability to effectively teach her courses.

52.     In November 2010, Plaintiff inquired as to why she was not assigned a mentor, and Ms. Strawbridge gave her no response.

6

53.     In January 2011, Plaintiff filed grievances with her PGCEA, but this only resulted in further retaliation.

54.     Finally in January 2011, after several complaints for not having a mentor, Principal Strawbridge fabricated documentation and claimed that Plaintiff was assigned "volunteer" mentor.

55.     The "volunteer" was a sham mentor, who had not been professionally trained or associated with the Professional Development Office.

56.     The American counterparts received professionally trained mentors who were assigned and overseen by the Professional Development Office.

57.     From February 15, 2011 to March 7, 2011, at Principal Strawbridge's behest, Plaintiff was subjected to a formal observation from three different administrators.

58.     Standard teacher evaluation guidelines provide that evaluations are to be based on "objective" standards and not just "subjective" observations.

59.     The "objective" evidence showed that under Ms. Manguiat's guidance, her students had made vast improvements.

60.     Despite the objective standards indicating Ms. Manguiat's superior performance, Defendant simply ignored the empirical data, and based the performance evaluation solely on Ms. Strawbridge's personal "subjective" observations.

61.     On March 8, 2011, based on her own "subjective" observations, Principal Strawbridge again gave Plaintiff an "Unsatisfactory" rating, contrary to objective evidence.

62.     On or about May 11, Defendants, by and through Principal Strawbridge and Ms. Smith, conspired to tamper with evidence and prevented colleagues from providing testimony regarding Ms. Manguiat's complaint.

63.     When Ms. Manguiat reported these issues to Ms. Strawbridge, she simply

suggested that Ms. Manguiat resign.

64.     As a result of these events, Ms. Manguiat has suffered and continues to suffer tremendous emotional distress manifesting in serious debilitating physical ailments.

65.     Upon information and belief, on or about July 2011, PGCPS was found liable by the U.S. Department of Labor for a series of violations relating to its role in petitioning for foreign teachers with the USCIS.

66.     Consequently, it was placed on debarment by the Department of Labor from March 16, 2012 to March 15, 2014.

67.     On or about November 4, 2011, because Defendant had not granted her tenure and because it had refused to petition for her permanent resident status, Ms. Manguiat was separated from PGCPS.

## COUNT I
### (Breach of Contract)

68.     Plaintiff repeats and realleges all of the allegations in paragraphs 1 through 67 and incorporates the same here by reference as though they are fully set forth herein.

69.     Plaintiff and Defendant entered into an employment contract, effective January 8, 2008.

70.     The Contract requires that Plaintiff be provided a notice of probation extension, no later than June 15 of her second academic year, June 15, 2009, or sixty (60) days before her second anniversary, November 8, 2009.

71.     The Employment Contract further requires that employees placed on third year probation be provided a mentor and reevaluated at the end of the third year.

72.     In breach of the Employment Contract, on April 20, 2010, Defendant notified Plaintiff that her probation period would be extended another year.

73.     In breach of the Employment Contract, Plaintiff was never provided a mentor.

74.     Plaintiff was due for tenure as of January 2010, but because Defendant did not provide her with notice of probation extension, she was not able to timely challenge the determination, thereby losing her opportunity to tenure and to gain permanent resident status in the United States.

## COUNT II
### (National Origin Discrimination in Violation of 42 U.S.C. §§ 2000e *et seq.* as amended)

71.     Plaintiff repeats and realleges all of the allegations in paragraphs 1 through 67 and incorporates the same here by reference as though they are fully set forth herein.

72.     Ms. Manguiat is of Asiatic origin or ancestry, and thus a member of the protected class.

73.     Ms. Manguiat was performing the duties of her job satisfactorily or better.

74.     The actions of the defendant PGBOE as set forth herein constitute national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended., because Plaintiff suffered adverse employment actions based on her Asiatic origins when she was unfairly evaluated, disparately treated, demoted, and denied equal opportunity.

75.     PGBOE's conduct constitutes intentional, willful, malicious, and flagrant violations of the rights of Plaintiff as to warrant punitive or exemplary damages.

76.     As a direct and proximate cause of the intentional national origin discrimination to which she was subjected, Plaintiff has suffered, and continues to suffer lost wages and benefits, humiliation, indignity, and extreme emotional distress.

## COUNT III
### (Race Discrimination in Violation of 42 U.S.C. §§ 2000e *et seq.*, as amended)

71.     Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 67 and incorporates the same here by reference as though they are fully set forth herein.

72.     Ms. Manguiat is Asian, and thus a member of the protected class.

73.     Ms. Manguiat was performing the duties of her job satisfactorily or better.

74.     The actions of the defendant PGBOE as set forth herein constitute race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, because Plaintiff suffered adverse employment actions as a result of her race when she was unfairly evaluated, disparately treated, demoted, and denied equal opportunity.

75.     PGBOE's conduct constitutes intentional, willful, malicious, and flagrant violations of the rights of Plaintiff as to warrant punitive or exemplary damages.

76.     As a direct and proximate cause of the intentional racial discrimination to which she was subjected, Plaintiff Manguiat has suffered, and continues to suffer lost wages and benefits, humiliation, indignity, and extreme emotional distress.

## COUNT IV
### (Retaliation in Violation of 42 U.S.C. §§ 2000e *et seq*., as amended)

77.     Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 67 and incorporates the same here by reference as though they are fully set forth herein.

78.     Commencing in December 2009, Ms. Manguiat engaged in a protected activity by complaining of hostile work environment, sexual harassment, and disparate treatment.  She made these complaints to Area Executive Director, Equity Assurance & Compliance Office, and to her union, PGCEA.

79.     Soon thereafter in 2010 and 2011, Ms. Manguiat was given unfair performance evaluation, demoted, denied equal support and equal opportunity.

80.     The actions of PGBOE as set forth herein constitute retaliation in violation of 42

U.S.C. §§ 2000e *et seq*., as amended by the Civil Rights Act of 1991.

81.     PGBOE's conduct constitutes intentional, willful, malicious, and flagrant

violations of the rights of Plaintiff as to warrant punitive or exemplary damages.

82.     As a direct and proximate cause of the retaliation to which she was subjected,

Plaintiff has suffered, and continues to suffer lost wages and benefits, humiliation, indignity, and

extreme emotional distress.

<u>**COUNT V**</u>
**(Hostile Work Environment in Violation of 42 U.S.C. §§ 2000e *et seq*., as amended)**

83.     Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 67

and incorporates the same here by reference as though they are fully set forth herein.

84.     Ms. Manguiat is a woman of Asiatic origin or ancestry, and thus a member of the

protected class.

85.     Ms. Manguiat was performing the duties of her job satisfactorily or better.

86.     Ms. Manguiat was subjected to a series of hostile employment conditions,

including but not limited to name calling, false discipline, unfair performance evaluation,

disparate, and demotion, as a result of her race and/or national origin.

87.     PGBOE's conduct constitutes intentional, willful, malicious, and flagrant

violations of the rights of Plaintiff as to warrant punitive or exemplary damages.

88.     As a direct and proximate cause of the hostile work environment to which she was

subjected, Plaintiff has suffered, and continues to suffer lost wages and benefits, humiliation,

indignity, and extreme emotional distress.

## COUNT IV
### (Race Discrimination in Violation of 42 U.S.C. § 1981, as amended)

89.     Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 67 and incorporates the same here by reference as though they are fully set forth herein.

90.     Ms. Manguiat is a woman of Asiatic origin or ancestry, and thus a member of the protected class.

91.     Ms. Manguiat was performing the duties of her job satisfactorily or better.

92.     The actions of the defendant PGBOE as set forth herein constitute race discrimination in violation of 42 U.S.C. § 1981, as amended, because Plaintiff suffered adverse employment actions as a result of his race and ancestry when she was falsely disciplined, unfairly evaluated, disparately treated, demoted, and denied equal opportunities and benefits.

93.     PGBOE's conduct constitutes intentional, willful, malicious, and flagrant violations of the rights of Plaintiff as to warrant punitive or exemplary damages.

94.     As a direct and proximate cause of the intentional race discrimination to which she was subjected, Plaintiff has suffered, and continues to suffer lost wages and benefits, humiliation, indignity, and extreme emotional distress.

## COUNT VII
### (Hostile Work Environment in Violation of 42 U.S.C. § 1981, as amended)

95.     Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 67 and incorporates the same here by reference as though they are fully set forth herein.

96.     Ms. Manguiat is a woman of Asiatic origin or ancestry, and thus a member of the protected class.

97.     Ms. Manguiat was performing the duties of her job satisfactorily or better.

98.     Ms. Manguiat was subjected to a series of hostile employment conditions, including but not limited to name calling, false discipline, unfair performance evaluation, disparate, and demotion, as a result of her race and/or national origin.

99.     PGBOE's conduct constitutes intentional, willful, malicious, and flagrant violations of the rights of Plaintiff as to warrant punitive or exemplary damages.

100.    As a direct and proximate cause of the hostile work environment to which she was subjected, Plaintiff has suffered, and continues to suffer lost wages and benefits, humiliation, indignity, and extreme emotional distress.

**WHEREFORE**, Ms. Manguiat respectfully requests the following:

1.  An order finding and declaring that PGBOE intentionally discriminated against Ms. Manguiat;

2.  An order finding and declaring that PGBOE retaliated against Ms. Manguiat;

3.  An order finding and declaring that PGBOE discriminated and subjected Ms. Manguiat to a hostile work environment;

4.  All back and front wages and benefits that Ms. Manguiat would have received but for the discrimination, retaliation, and hostile work environment, including pre-judgment interest;

5.  Compensatory and general damages, including emotional distress, according to proof;

6.  Punitive damages according to proof;

7.  Reasonable attorney's fees and costs of this action; and

8.  Such other relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Ms. Manguiat demands trial by jury as to all issues so triable.

Respectfully submitted,

**LAW OFFICE OF HNIN N. KHAING**

_/s/ Hnin N. Khaing_____
Hnin N. Khaing, Esquire
Federal Bar No. 18239
1420 N Street, NW, Suite 102
Washington, DC 20005
(202) 232-4079 (t)
(888) 299-8053 (f)
hkhaing@legaloptionstoday.com

*Trial Attorney for Plaintiff*